IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERI POTTS,<br>a/k/a CHARLY POTTS,<br><br>      Plaintiff,<br><br>v.<br><br>AMERICAN CASTINGS, LLC,<br>an Oklahoma corporation,<br><br>      Defendant. | Case No. 20-CV-00243-GKF-CDL |

**OPINION AND ORDER**

Before the court is the Motion for Summary Judgment [Doc. 12] filed by defendant American Castings, LLC ("Castings"). For the reasons set forth below, the motion is granted.

**I. Background**

Plaintiff Jeri Potts (also known as Charly Potts) filed this lawsuit in the District Court for Mayes County, Oklahoma on May 7, 2020. [Doc. 2, p. 1 ¶ 1]. She claims that her termination by Castings: (1) violated the Americans with Disabilities Act ("ADA") and the Oklahoma Anti-Discrimination Act ("OADA") [Doc. 2-1, pp. 3–4 ¶¶ 17–27]; and (2) violated Oklahoma Public Policy [Doc. 2-1, pp. 4–5 ¶¶ 28–33]. Castings removed the action to this court. [Doc. 2]. Castings seeks summary judgment in its favor on all claims asserted by Potts.

**II. Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" "if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In considering a motion for summary judgment, "[t]he evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party." *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). Summary judgment is appropriate only "where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Stover*, 382 F.3d at 1070 (quoting Fed. R. Civ. P. 56(c)).

### III. Undisputed Material Facts

On February 6, 2019, Potts began working at Castings on a 90-day probationary basis. She successfully passed a urine drug test at that time. At the end of her probationary period, Castings offered Potts a full-time position. On May 24, 2019, Potts was drug-tested and her sample tested positive for THC. Potts did not have an Oklahoma medical marijuana license in 2019. Potts' sample was retested, and Potts was notified on May 28, 2019 that the second test was positive as well.

While meeting with Castings' Human Resources Director on May 30, 2019, Potts explained that she had been diagnosed with lupus in 2015 and was taking CBD products as an

alternative medicine.[1] This was the first time Potts informed anyone at Castings that she had lupus; she had not identified as disabled on the AAP/EEO self-disclosure form she completed with Castings, she never requested any accommodation for her lupus, and she later testified that she does not consider herself disabled. During that meeting, Castings' Human Resources Director suggested that Potts have her split urine sample tested, but Potts declined.[2] Castings' Human Resources Director suggested that if Potts could provide a negative hair follicle test, they could move forward with Potts' full-time employment. Potts agreed, and the hair follicle test came back positive for THC on June 5, 2019. On June 6, 2019, Castings decided not to hire Potts as a full-time employee.

**IV. Summary Judgment Analysis**

*A. ADA and OADA Claims*

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). To establish a *prima facie* discrimination claim under the ADA, Potts must establish that: "(1) she is disabled within the meaning of the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) she was discriminated against because of her disability." *Winston v. Ross*, 725 F. App'x 659, 663 (10th Cir. 2018) (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d

---

[1] The court notes that Potts does not comply with Local Civil Rule 56.1(c) which requires her to begin her response brief with a section which contains a concise statement of material facts as to which she asserts genuine issues of fact exist. *See* LCvR 56.1(c). Instead, Potts objects in narrative form to only three of the statements of undisputed material fact listed in Castings' motion. Interestingly, Potts never disputes Castings' undisputed material fact that Potts does not have a disability. [Doc. 12, pp. 5–6 ¶ 20]. However, as neither party addresses this *prima facie* element in the briefs, the court limits its analysis to the issues argued in the briefs.

[2] The initial urine sample is split into two separate specimens to ensure that subsequent analysis can be done if necessary. [Doc. 12-3, pp. 2–3].

1114, 1118 (10th Cir. 2004)); *see also Murphy v. Samson Res. Co.*, No. 10-CV-694-GKF-TLW, 2012 WL 1207210, at *13 (N.D. Okla. Apr. 10, 2012) (same). Pursuant to the OADA, Oklahoma also statutorily prohibits employment discrimination against the disabled. Okla. Stat. tit. 25, § 1302. "The Tenth Circuit has determined that a plaintiff's OADA claim fails if her [ADA] discrimination claims fail." *McCully v. Am. Airlines, Inc.*, 695 F. Supp. 2d 1225, 1246 (N.D. Okla. 2010) (citing cases); *see also Hamilton v. Oklahoma City Univ.*, 911 F. Supp. 2d 1199, 1206 (W.D. Okla. 2012) ("Because the protections provided by the OADA are 'co-extensive with the protections provided by federal law under the ADA,' a plaintiff's OADA claim fails 'if her federal discrimination claims fail.'" (quoting *McCully*, 695 F. Supp. 2d at 1246–47)).

In the summary judgment context, Potts initially must raise a genuine issue of material fact on each element of her *prima facie* case. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). If she does so Castings must state a legitimate, nondiscriminatory reason for the alleged adverse employment action. *Selenke v. Medical Imaging of Colorado*, 248 F.3d 1249, 1259 (10th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802). If Castings meets this burden, then summary judgment is warranted unless Potts can show a genuine issue of material fact as to whether the proffered reason for the employment action is pretextual. *Id.* at 1260.

Castings first argues that Potts cannot show she was terminated because of her disability. In response, Potts focuses on Castings' Drug/Alcohol Use and Testing Policy ("the Policy") [Doc. 12-3]. Specifically, Potts argues that Castings has construed her "testing result to be a violation of [its] Drug and Alcohol Policy and terminated her employment and withdrew her job offer," but "[i]t is disputed that Plaintiff's drug test results were a factual violation of the Policy" because "[n]owhere does the Policy define 'drugs,' 'controlled substances,' nor 'marijuana.'" [Doc. 23, p.

4

3]. Potts contends that summary judgment is not warranted because if a trier of fact finds that her positive drug test was not a "factual violation" of the Policy, then she "may very well be able to prove that her termination was due to her disclosure of her disability." [*Id.* p. 5].

Upon review of the arguments raised and evidentiary materials submitted, the court finds and concludes that Potts has failed to show a genuine issue of material fact exists as to whether Castings terminated her *because* of her disability. The undisputed evidence is that Castings rescinded Potts' employment offer after she tested positive for THC, as is required by the Policy. The Policy specifies the action Castings will take if an employee has a positive test. For instance, the section of the Policy titled "No Working While Under the Influence" states:

> It is the policy of the Company to prohibit employees from reporting to work with detectable amounts of alcohol or any non-prescribed, controlled substances in their blood/urine. It is also the policy of the Company to conduct appropriate testing to verify whether such levels are present. *When an employee's test result has been confirmed positive, he or she will be terminated from employment*.

[Doc. 12-3, p. 1 ¶ 1.a. (emphasis added)]. In the section regarding testing applicants for substances "[p]rior to assuming any job," the Policy states that "[i]f the test shows a positive result for the presence of drugs or alcohol, and such test results are confirmed, then such test results *shall be grounds for refusal of employment*." [Doc. 12-3, p. 2 ¶ 3.a. (emphasis added)]. Further, regarding positive test results, the Policy states:

> If an applicant has a positive test result, *the Company reserves the right to immediately withdraw the employment offer unless the applicant can provide a satisfactory explanation of the positive test and, thereafter, can take and pass another drug/alcohol test*. If an employee's test result is positive, the employee may be temporarily suspended while a confirmation test is conducted. On receipt of the confirmation test results, *an employee who tests positive is subject to immediate discharge*.

[Doc. 12-3, p. 3 ¶ 8 (emphases added)]. In addition to the text of the Policy, both parties state that their understanding of the Policy was that it was a "zero tolerance" policy; Castings' Director of Human Resources describes the Policy as "zero tolerance" in her affidavit [Doc. 12-1 pp. 1–2 ¶¶ 2–

4], as does Potts during her deposition testimony [Doc. 12-2, pp. 37:9–39:16, 43:15–21, 60:19–61:1].

Potts argues about the ambiguity of the term "drug," and the effects of recent changes to controlled substances laws on her situation. However, her arguments regarding the legality of CBD products or the levels of THC now excluded from certain federal and state controlled substance laws are irrelevant because it is undisputed that Potts had positive tests, which are grounds for dismissal under the Policy. Second, Potts relies on a section of the Policy where it states that Castings will not "take action solely based upon the results of a drug test showing positive for marijuana or its compounds." But that section only applies to those with Oklahoma medical marijuana licenses, and Potts admits she did not have one at the time. Moreover, it would not have mattered whether she had a medical marijuana license because she was in a "safety sensitive position," and employees with medical marijuana licenses are barred from serving in those positions. As such, Potts has failed to show a genuine issue of material fact as to whether Castings terminated her because of her disability.

Castings also argues it has a legitimate, non-discriminatory reason for its decision to terminate Potts and that Potts cannot show that Castings' reason is actually pretext for disability discrimination. The court finds that Castings has stated a legitimate, non-discriminatory reason for its employment decision; Potts had two positive drug screenings as well as a positive hair follicle test, which precludes her from employment under the Policy. Potts contends that Castings' decision was pretextual because if a trier of fact finds that her positive drug screening was not a "factual violation" of the Policy, then she "may very well be able to prove that her termination was due to her disclosure of her disability." [Doc. 23, p. 5]. Essentially, Potts' argument is one of timing; although she had a positive screening, it was not until after she had disclosed her lupus that

she was finally terminated by Castings. This, she argues, may raise the inference of a pretextual firing.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017) (quoting *Morgan*, 108 F.3d at 1323). "Typically, a plaintiff may show pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that . . . [the plaintiff] was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Id.* (alteration in original) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). "In considering whether the employer's proffered reason is pretextual, 'we examine the facts as they appear to the person making the decision; we do not look to the plaintiff's subjective evaluation of the situation.'" *Betts v. Work Zone Traffic Control, Inc.*, 802 F. App'x 365, 372 (10th Cir. 2020) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011)). "[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Morgan*, 108 F.3d at 1323 (alterations in original) (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).

As has been discussed, Potts has failed to show that Castings' stated reason for termination was false, or that Castings acted contrary to the Policy. Even though Potts was not terminated until after she disclosed that she has lupus, Castings' Human Resources personnel made clear she would

7

be terminated should she have a positive drug screening during her employment onboarding, which Potts verified during her deposition. [Doc. 12, pp. 2–3 ¶ 4; Doc. 12-2, pp. 37:9–45:25]. Further, Castings' employees did not know that Potts suffered from any sort of disability until *after* the initial positive drug screening had returned and Castings had warned her that she would not be able to return to work unless she provided a negative screening. [Doc. 12, pp. 4–5 ¶¶ 14–15, 17; Doc. 12-2, pp. 48:7–15, 53:1–23, 54:11–55:7]. Potts has also offered no evidence that she was treated differently from other similarly-situated employees. In fact, *Potts herself said during her deposition that she does not believe she was discriminated against because of her disability*. [Doc. 12-2, pp. 68:22–70:10, 80:24–81:9, 88:21–89:13 ("I was being [discriminated against], well, I mean, not because of my lupus -- no, I don't feel that way, no.")]. Examining the facts from Castings' viewpoint, Potts has failed to demonstrate a genuine issue of material fact as to pretext, as her timing argument is nothing more than an inference.

For all of the foregoing reasons, the court grants Castings' motion for summary judgment as to the ADA and OADA claims.

*B. Burk Tort Claim*

The Oklahoma Supreme Court created a narrow exception to the doctrine of at-will employment when it adopted a cause of action for employees who are discharged in violation of Oklahoma's public policy. *Burk v. K-Mart Corp.*, 770 P.2d 24, 29 (Okla. 1989). The cause of action, known as a *Burk* tort, exists "where an employee is discharged [1] for refusing to act in violation of an established and well-defined public policy or [2] for performing an act consistent with a clear and compelling public policy." *Id.* A *Burk* tort applies only in a narrow class of cases and must be tightly circumscribed. *Id.* In order to prevail on such a claim, a plaintiff must identify "an Oklahoma public policy goal that is clear and compelling and articulated in existing

8

constitutional, statutory or jurisprudential law." *McCrady v. Oklahoma Dept. of Pub. Safety*, 122 P.3d 473, 475 (Okla. 2005) (citing *Clinton v. State ex rel. Logan Cnty. Election Bd.*, 29 P.3d 543, 546 (Okla. 2001)).

Castings argues that Potts' *Burk* tort claim is deficient as a matter of law because it fails to identify a clear and compelling Oklahoma public policy goal. "To prevail on a claim for wrongful discharge in violation of Oklahoma's public policy, a plaintiff must first identify an Oklahoma public policy goal that is well established, clear and compelling, and articulated in existing constitutional, statutory, or jurisprudential law." *Cameron v. Am. Elec. Power Servs. Corp.*, No. 04-CV-948-GKF-SAJ, 2007 WL 1574536, at *1 (N.D. Okla. May 29, 2007) (citing *Silver v. CPC-Sherwood Manor, Inc.*, 84 P.3d 728, 729 (Okla. 2004); *Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001)). Whether a plaintiff has identified a clear mandate of Oklahoma public policy is a question of law to be resolved by the court. *See e.g.*, *Clinton*, 29 P.3d at 546; *McCrady*, 122 P.3d at 475; *Hayes v. Eateries, Inc.*, 905 P.2d 778, 785 (Okla. 1997). "[C]ourts will be able to screen cases on motions to dismiss for failure to state a claim or for summary judgment if the discharged employee cannot allege a clear expression of public policy." *Burk*, 770 P.2d at 29 (quotation omitted).

Potts has asserted four potential bases for her *Burk* tort claim: (1) the ADA [Doc. 2-1, p. 3 ¶ 23]; (2) "a federal law known as the '2018 Farm Bill' . . . passed by the U.S. Congress" [Doc. 2-1, p. 4 ¶ 26]; (3) the OADA [Doc. 2-1, p. 5 ¶ 32]; and (4) "the Standards for Workplace Drug and Alcohol Testing Act, 40 Okla. Stat. § 551" [Doc. 23, p. 5].[3] Three of these possible bases can be

---

[3] Potts generically states that "[n]umerous public policies are available to Plaintiff to support her contention that her termination violated public policy." [Doc. 23, pp. 5–6; *see also* Doc. 2-1, p. 4 ¶ 30]. The court will only consider the specific sources of public policy Potts cites, as she must first identify an Oklahoma public policy goal that is well-established, clear and compelling, and

dispensed with quickly. "[A] federal statute cannot serve as an articulation of Oklahoma public policy, absent a specific Oklahoma decision, statute or constitutional provision." *Griffin v. Mullinix*, 947 P.2d 177, 179 (Okla. 1997); *see also Gooden v. Omni Air Transp. L.L.C.*, No. 06-CV-618-GKF-FHM, 2008 WL 686882, at *1–2 (N.D. Okla. Mar. 10, 2008) (same); *Roberts v. Int'l Bus. Machines Corp.*, 896 F. Supp. 2d 1068, 1082 (N.D. Okla. 2012) (same). In addition, the OADA can no longer sustain a *Burk* tort claim; the Oklahoma Legislature amended the OADA in 2011 to create a statutory cause of action for employment-based discrimination that abolished all common law remedies. *See* Okla. Stat. tit 25, § 1350. "Thus, the [amended OADA] abolishes the common law *Burk* tort." *Hall v. David H. Elliot Co.*, No. 11-CV-0746-CVE-TLW, 2012 WL 3583017, at *2 (N.D. Okla. Aug. 20, 2012); *see* Stephanie Johnson Manning & J. Miles McFadden, *Oklahoma Legislature Bars Public Policy Discrimination Tort Claims*, 82 The Oklahoma Bar Journal 26, p. 2279 (2011) ("The amended OADA provides the *exclusive* remedy for individuals alleging status-based discrimination and specifically states that 'any common law remedies are hereby abolished.' Consequently, common law causes of action such as the *Burk* tort are no longer available to individuals seeking redress for status-based discrimination."). Therefore, Potts' first three bases for a *Burk* tort fail as a matter of law.

The remaining basis, the Standards for Workplace Drug and Alcohol Testing Act ("DAT Act"), Okla. Stat. tit. 40, §§ 551–563, requires more discussion, but it also fails to sustain a *Burk* tort claim as a matter of law. The DAT Act governs various aspects of workplace drug and alcohol testing, such as when and how an employer can drug test employees, what information the employer's written drug and alcohol policy must contain, the details of how tests must be

---

articulated in existing constitutional, statutory, or jurisprudential law. *Cameron*, WL 1574536, at *1.

10

conducted, the licensing requirements of the testing sites, and what actions an employer can take after a test has been conducted. *Id.* The DAT Act includes its own remedies; a party can allege willful violations of the DAT Act in civil court within one year and, should she prevail, be awarded lost wages and reasonable costs and attorney fees. Okla. Stat. tit. 40, § 563.

Potts' attempt to use the DAT Act fails because her claims really center on her being terminated because of her disability. In her response, Potts states that she "has numerous legal theories under which to support her *Burk* Tort, including a willful violation of the [DAT Act] for terminating Plaintiff's employment even though her drug test results were not a factual violation of the Defendant's Policy." [Doc. 23, p. 5]. However, in her Petition, Potts' allegations regarding her drug screening focus on her inferential argument that her reason for termination was pretextual under the ADA and OADA; she never mentions the DAT Act. [*See* Doc. 2-1, pp. 3–4 ¶¶ 22–27]. And Potts herself testified that there was nothing wrong with the way the drug tests were performed. [Doc. 12-2, p. 61:1-22 (Potts answering "no" about whether she thought there was "something wrong with the testing process," and stating that her objection was not because "there was something wrong with the urine screen or hair follicle test")]. The United States District Court for the Western District of Oklahoma addressed a similar case in which the plaintiff alleged he had multiple bases in Oklahoma statutes and the Oklahoma Constitution for a *Burk* tort claim, but "in reality [all of] his claims center[ed] on termination in violation of Oklahoma's Whistleblower Act . . . ." *Delong v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, No. CIV-14-1439-C, 2015 WL 1955382, at *1 (W.D. Okla. Apr. 29, 2015), *aff'd sub nom. Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x 691 (10th Cir. 2017). As the *Delong* plaintiff's "various claims of public policy [we]re, in effect, premised on the public policy set forth by Oklahoma's Whistleblower Act[] rather than the

individual statutes or constitutional provisions on which he relie[d]," and "the remedies provided by the Whistleblower Act [we]re sufficient to protect Oklahoma's public policy[,]" the court did not permit the *Burk* tort to proceed. *Id.* Here, Potts' claims are "premised on the public policy set forth in" the OADA. As has been explained, the OADA no longer serves as a basis for *Burk* tort claims. Therefore, Potts' attempt to use the DAT Act as a backdoor into a *Burk* tort claim must be denied.

For the foregoing reasons, Castings' motion for summary judgment regarding Potts' *Burk* tort claim is granted.

## V. Conclusion

WHEREFORE, defendant's Motion for Summary Judgment [Doc. 12] is granted.

IT IS SO ORDERED this 1st day of February, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE